IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Carolyn Sue Maddox**                                                                                    **Plaintiff**

**Cause No. 3:13-CV-067-JTK**

**Carolyn W. Colvin, Acting Commissioner,**                                              **Defendant**
**Social Security Administration**

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Carolyn Sue Maddox seeks judicial review of the denial of her application for disability insurance benefits, supplemental security income, and disabled widow's benefits.[1] Maddox claims she has been disabled since September 1, 2009. She bases disability on osteoporosis, back problems, diabetes, high blood pressure, high cholesterol, uterus problems, polycystic fibrosis, diverticulitis, and a broken tail bone.[2]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined Maddox has severe impairments — diabetes mellitus, hypertension, hyperlipidemia, obesity, pain disorder, osteoarthritis, diverticulitis, and history of a broken tail bone[3] — but she can do some light work, to include her past

---

[1]Disability is defined in the same way for each of these disability benefits. 20 C.F.R. § 404.1505 ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[2]SSA record at p. 100.

[3]*Id*. at p. 25.

work as a caregiver/ companion.[4] Because a person who can do her past work is not disabled,[5] the ALJ determined Maddox is not disabled under the Social Security Act and denied the application.

After the Commissioner's Appeals Council denied a request for review,[6] the ALJ's decision became a final decision for judicial review.[7] Maddox filed this case to challenge the decision. In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[8]

**Ability to work**. Maddox challenges the determination that she can do light work.[9] She maintains her knees, weight, and limited range of motion prevent working.

---

[4]*Id*. at p. 32.

[5]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[6]SSA record at p. 4.

[7]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

[8]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[9]Docket entry # 11, pp. 19-21.

She maintains substantial evidence does not support the ALJ's decision.

For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Maddox can do some light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[10] The ALJ reduced light work by occasional crouching, stooping, and kneeling, and no crawling.[11] A reasonable mind would accept the following evidence as adequate to show Maddox can work within these parameters:

> 1. <u>Evidence about osteoporosis</u>. Maddox bases disability, in part, on osteoporosis — "a disease characterized by low bone mass and deterioration of bone tissues, leading to bone fragility and, consequently, an increase in fracture risk."[12] The record contains no evidence of osteoporosis. A bone density scan showed normal bone density.[13] "The risk for fracture is not increased."[14] A reasonable mind would accept this evidence as adequate to show osteoporosis does not impair Maddox's ability to work.
>
> 2. <u>Evidence about back problems and a broken tail bone</u>. Maddox also bases disability on back pain and a broken tail bone.[15] Maddox reported a

---

[10] 20 C.F.R. §§ 404.1567(b) & 416.967(b).

[11] SSA record at p. 28.

[12] Jennifer F. Wilson, Tish Davidson & Rebecca J. Frey, 4 The Gale Encyclopedia of Med. 3194 (4th ed.).

[13] SSA record at p. 205.

[14] *Id*.

[15] *Id*. at pp. 87-88 (reporting back pain and a broken tail bone that may be the source of back pain).

fall to her doctor.[16] The doctor later assessed lumbar strain.[17] Lumbar strain ordinarily resolves with conservative treatment.

Maddox's physical examination provides the only significant evidence of a back problem. The examiner found a decreased range of motion in the low back. Maddox can bend to 75 degrees, as compared to a normal range of 90 degrees.[18] The examiner reported a mild limitation in the ability to change positions, and a moderate limitation in the ability to kneel and stoop.[19] These findings support the limitations placed on light work, but suggest no impairment preventing light work. The record contains no evidence of a broken tail bone. A reasonable mind would accept the evidence as adequate to show that neither a back problem nor a broken tail bone prevents Maddox from doing light work.

3. <u>Evidence about hypertension, high cholesterol, and diabetes</u>. In June 2008, Maddox was diagnosed with hypertension and high cholesterol;[20] the following November, she was diagnosed with diabetes mellitus, type II.[21] Maddox's doctor prescribed medication for hypertension, high cholesterol, and diabetes. Maddox continued working full-time as a caregiver/companion. Maddox's hypertension, high cholesterol, and diabetes can be controlled with medication.[22] "An impairment which can

---

[16]*Id*. at p. 268 (reporting that she fell at work on Sept. 28, 2009, and complaining about sleepiness and vision problems).

[17]*Id*. at p. 255 (listing acute lumbar strain as a new problem).

[18]*Id*. at p. 190.

[19]*Id*. at p. 191.

[20]*Id*. at p. 334 (treatment note listing hypertension as a new problem); p. 323 (treatment note listing hypercholesterolemia as a new problem).

[21]*Id*. at p. 320 (treatment note listing diabetes mellitus as a new problem).

[22]*Id*. at pp. 301, 407 & 423.

be controlled by treatment or medication is not considered disabling."[23] A reasonable mind would accept the evidence about hypertension, high cholesterol, and diabetes as adequate to show that these conditions do not prevent light work.

5. <u>Evidence about uterus problems</u>. Maddox also relies on uterus problems to support her claim. In December 2009, a gynecologist determined Maddox has a moderate uterus prolapse.[24] Uterus prolapse occurs when the uterus sags into the vagina; childbirth, aging, loss of estrogen, and obesity increase the risk of uterus prolapse.[25] Maddox has these risk factors.[26] Maddox's doctor prescribed estrogen cream and exercises to strengthen pelvic floor muscles.[27] Maddox sought no followup care. The lack of further treatment indicates uterus prolapse does not prevent light work.

6. <u>Evidence about polycystic fibrosis</u>. A 2007 mammogram showed microcalcifications in the left breast.[28] A biopsy showed non-cancerous, fibrocystic tissue.[29] Subsequent mammograms were normal.[30] No evidence suggests fibrocystic breast tissue causes pain or any other symptom. No evidence shows fibrocystic breast tissue prevents light

---

[23]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[24]SSA record at p. 161-62.

[25]Ann Quigley & Laura Jean Cataldo, 5 The Gale Encyclopedia of Med. 3317-18 (4th ed.).

[26]Childbirth: Maddox has five children. Age: She was 61 when she applied for disability benefits. Obesity: Her height and weight indicate obesity.

[27]SSA record at p. 162.

[28]*Id*. at p. 350 ("The calcifications are sufficiently suspicious for occult cancer to warrant histologic examination by stereotactic localization.").

[29]*Id*. at p. 364 (benign pathology report).

[30]*Id*. at pp. 342 & 366.

work.

7. <u>Evidence about alleged diverticulitis</u>. Maddox testified that she stopped working because she became ill from diverticulosis and required surgery.[31] Diverticulosis "refers to a condition in which the inner, lining layer of the large intestine (colon) bulges out (herniates) through the outer, muscular layer."[32] Maddox stated that she continues to have bowel problems, even after her surgery; she says she must use the bathroom five or six times daily.[33] The record, however, contains no medical evidence of diverticulitis. In the absence of medical evidence, Maddox cannot prove disability based on diverticulitis, because an ALJ's determination about a person's ability to work must be supported by medical evidence.[34]

8. <u>Evidence about knee pain</u>. Diagnostic imaging shows mild osteoarthritis in both knees; the left knee also has a small bone spur.[35] These findings may cause pain and make it harder to kneel and crawl, but without more, they do not prevent light work. The ALJ accounted for knee pain by limiting kneeling and eliminating crawling.

9. <u>Evidence about weight</u>. Maddox's most significant limitation likely flows from her weight. Her weight and height indicate obesity. Obesity can limit the ability to sit, stand, walk, lift, carry, push, and pull; "[i]t may also affect [the] ability to do postural functions, such as climbing, balanc[ing], stooping, and crouching."[36] The medical experts opined that Maddox can occasionally lift 50 pounds and frequently lift and carry 25

---

[31]*Id*. at p. 435.

[32]Rosalyn Carson-DeWitt, 2 The Gale Encyclopedia of Med. 1394 (4th ed.).

[33]SSA record at p. 439.

[34]*Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

[35]SSA record at p. 164.

[36]SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, ¶ 8.

pounds.[37] The medical opinions reflect more capacity than needed for light work, but the ALJ reduced Maddox's ability to work to light work. No medical evidence supports a further reduction.

10. <u>Mental diagnostic evaluation</u>. After her husband passed away, Maddox was treated her for depression and anxiety.[38] The ALJ responded by ordering a mental diagnostic evaluation.[39] The evaluator found no mental symptoms limiting Maddox's ability to work.[40] Maddox reported that pain and physical limitation caused her to reduce her work hours, not mental symptoms.[41] The evaluator diagnosed pain disorder associated with medical and psychological factors, depressive disorder, and anxiety disorder.[42] Maddox's psychotropic medications controls her symptoms.[43] A reasonable mind would accept the mental diagnostic evaluation as adequate to show that mental impairment does not prevent Maddox from working.

11. <u>Work history</u>. Maddox worked full-time as a caregiver/companion from 1993 to 2009.[44] In November 2009, her patient moved to a nursing home.[45] The patient's family then employed Maddox to sit with the patient for two days per week, seven hours per day.[46] Maddox told the

---

[37]*Id*. at pp. 193 & 427

[38]*Id*. at pp. 319-20.

[39]*Id*. at p. 165.

[40]*Id*. at pp. 171-72.

[41]*Id*. at p. 167.

[42]*Id*. at p. 170.

[43]*Id*. at p. 166.

[44]*Id*. at pp. 79, 101 & 167.

[45]*Id*. at p. 120.

[46]*Id*. at pp. 63, 112 & 161.

mental diagnostic evaluator that she stopped working full-time because she could no longer lift her patient,[47] but a reasonable mind would accept this work history as adequate to show that Maddox stopped working full-time for reasons other than her health.

A vocational expert classified Maddox's past work as light work.[48] The vocational expert stated that a person who can occasionally crouch, kneel, and stoop, but not crawl, can work as a caregiver/companion. This evidence shows work exists that Maddox can do. Although Maddox's past job is no longer available, the law requires an ALJ to consider all work existing in significant numbers in the national economy, regardless of whether such work exists where Maddox lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[49]

To the extent Maddox contends the ALJ failed to ask the vocational expert about all of her limitations,[50] that claim flows from her allegations. The ALJ is not required to question a vocational expert about alleged impairments.[51] The ALJ's question captured

---

[47]*Id*. at p. 167.

[48]*Id*. at p. 443.

[49]42 U.S.C. § 1382c(a)(3)(B).

[50]Docket entry # 11, p. 21.

[51]*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) ("A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ.").

8

the concrete consequences of Maddox's impairments.[52] The ALJ properly determined that Maddox over-stated her limitations.

**Conclusion**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the court DENIES Maddox's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 11th day of December, 2013.

_____
United States Magistrate Judge

---

[52]*Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006) ("[T]he hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments.").